# International Agricultural Corporation *v.* Abercrombie.

*Assumpsit.*

(Decided May 20, 1915. 68 South. 873.)

1. *Damages; Evidence; Similar Facts.*—Where damage to land and crops caused by fumes from a fertilizer factory was set up as a counter claim to an action for the price of fertilizer, evidence as to the amount of cotton produced on similar land where the reasons were practically the same, but the land- and cultivation was inferior, was admissible as a comparative basis for estimating damages.

2. *Witnesses; Examination; Form of Question.*—A question asked a defendant, the owner of the land and crop, as to how much corn a certain tract would have produced, if it had not been for the fumes, was definite enough where the context of the testimony showed that it was the fumes from the fertilizer factory that were referred to, if the question was otherwise unobjectionable.

3. *Damages; Measure; Recurrent.*—Where permanent injury is done to land by the casual or recurrent overflow of water, the measure of damages is the difference between the value of the land with and without such injury at the time thereof.

4. *Witnesses; Examination; Form of Question.*—A question to a witness as to the difference in the value of his land immediately before and immediately after it was overflowed, for all purposes—the market value—was not rendered misleading because of the last part tacked on to the original question by amendment, and if misleading, plaintiff should have investigated its effects by cross-examination.

5. *Same; Market Value.*—A question calling for the difference in the market value of land before and after the injury need not request the reasonable market value, as the expression "market value" necessarily means the fair or reasonable value.

6. *Damages; Land; Value.*—Where the owner had testified to the probable yield of an acre of garden corn, evidence as to what was the average market value of such corn during its marketing season, rather than its market value at the date of its probable maturity,

[International Agricultural Corporation v. Abercrombie.]

was competent, since such evidence must be used only as a basis for estimating damages, and not as the measure of recovery.

(Somerville, J., dissents in part.)

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Action by the International Agricultural Corporation against C. G. Abercrombie. Judgment for the defendant on his counterclaim, and plaintiff appeals. Affirmed.

Plaintiff sued defendant on promissory notes aggregating $1,341, with $200 for attorney's fees. Defendant did not dispute the indebtedness, but set up as a counterclaim damages in the sum of $10,000 done by plaintiff to defendant's land and growing crop for the year 1911; the claim being that the crops were respectively injured or destroyed by fumes from defendant's fertilizer plant and a tract of land overflowed by water drained therefrom, which poisoned the land and prevented any growth on it for a long time. There was verdict and judgment for defendant on his counterclaim for $744. The assignments of error relate to rulings on the evidence, and are sufficiently stated in the opinion.

For former opinion, see 184 Ala. 244, 63 South. 541.

RUSHTON, WILLIAMS & CRENSHAW, for appellant.

WEIL, STAKELEY & VARDAMAN, and HILL, HILL, WHITING & STERN, for appellee.

SOMERVILLE, J.—(1) It clearly appeared from the testimony of defendant's witness Jones that the negro Elmore's cotton was made on land similar to defendant's, and with seasons practically the same, and that Elmore's land and his cultivation of his cotton were

inferior to defendant's. It was therefore proper for defendant to show by Elmore that he made two bales of cotton that season on his own land, as a comparative basis for the estimation of defendant's damage.

(2) Defendant was asked by his counsel how much a certain tract planted in corn would have produced in 1911, with the seasons and culture as shown, "if it had not been for the fumes." The context of his testimony shows that the fumes referred to were those that issued from defendant's plant, and the question, as framed, was definite enough, and not otherwise objectionable. The objections to this and a number of similar questions were properly overruled.

(3) Where permanent injury is done to land by the casual or recurrent overflow of water, the measure of damages is the difference between the value of the premises with and without such injury at the time thereof. —*S. S. S. & I. Co. v. Mitchell*, 181 Ala. 576, 61 South. 934.

(4) It was therefore proper for his counsel to ask defendant: "What was the difference in value between that land immediately before this water overflowed it and immediately after the water overflowed it from the International Agricultural Corporation plant, for all purposes—the market value?"

We do not think the question was misleading because of the fact that the last clause of it was tacked on to the original question by amendment; and, even if possibly misleading, plaintiff should have investigated its effect by cross-examination.

(5 )Nor was it necessary to ask for the reasonable market value of the lands, since "market value" necessarily means its fair or reasonable value.—5 Words and Phrases, 4385.

(6) Defendant testified that he had one acre in "garden corn" which should have yielded 50 bushels. He

was allowed, over plaintiff's objection, to state that the average market value of such corn during its marketing season in 1911 was $1.25 per bushel.

As a more accurate basis for estimating the injury caused by the destruction of this crop, defendant might have stated the date of its probable maturity and the market value of such corn at that time. It is common knowledge that the earliest crops of any vegetable command the highest market prices. If defendant's corn should have matured for market in mid-season, it would probably not have brought the average price for the whole season. For this reason, the writer was of the opinion that the admission of the statement in question was erroneous. The rest of the court are of the opinion, however, that, inasmuch as the value stated was not to be used as the measure of recovery, but only as a basis for the estimation of damages, and as it was, in fact, legitimate evidence tending to show the amount of damage suffered, it was properly admitted.

There being no error in the record, the judgment will be affirmed.

Affirmed. All the Justices concur.